IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-126

 No. COA21-196

 Filed 1 March 2022

 Wake County, No. 13 SP 2914

 IN THE MATTER OF THE ADOPTION OF: C.H.M., a minor child.

 Appeal by respondent from order entered 13 August 2020 by Judge Debra

 Sasser in Wake County District Court. Cross-appeal by petitioners from order entered

 21 July 2020 by Judge Debra Sasser in Wake County District Court. Heard in the

 Court of Appeals 14 December 2021.

 Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for petitioners-
 appellees/cross-appellants.

 Jonathan McGirt for respondent-appellant/cross-appellee.

 TYSON, Judge.

¶1 Venson Westgate (“Respondent”) appeals the trial court’s order denying his

 motion to dismiss the adoption petition. We affirm. Carolyn and Michael Morris’

 (“Petitioners”) cross-appeal is dismissed as moot.

 I. Background

¶2 The factual background of this case is set forth in three previous appellate

 opinions: In re C.H.M., 245 N.C. App. 566, 782 S.E.2d 582, 2016 WL 611926 (2016)
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 (unpublished) (affirming the dismissal of Petitioners’ petition for termination of

 Respondent’s parental rights to his minor daughter, C.H.M.); In re Adoption of

 C.H.M., 248 N.C. App. 179, 189, 788 S.E.2d 594, 600 (2016), (affirming trial court’s

 order concluding Respondent’s consent is required to proceed with the adoption of his

 minor daughter, C.H.M.), rev’d, 371 N.C. 22, 23, 812 S.E.2d 804, 806 (2018) ( holding

 “respondent failed to meet his burden of proving that he provided such support within

 the relevant statutory period, we conclude that the evidence is legally insufficient to

 support the trial court’s order requiring respondent’s consent”).

¶3 The Supreme Court of North Carolina’s 4-3 decision, reversing this Court’s

 unanimous opinion that Respondent had complied with N.C. Gen. Stat. § 48-3-

 601(2)(b)(4)(II) did not address Respondent’s due process arguments. The Supreme

 Court remanded the cause to this Court for further remand to the trial court “for

 proceedings consistent with [the] opinion.” Adoption of C.H.M., 371 N.C. at 34, 812

 S.E.2d at 812.

¶4 The trial court issued its order upon remand on 15 November 2018. The order

 states, “[as] a result of the North Carolina Supreme Court’s holding that

 ‘[R]espondent’s evidence was insufficient as a matter of law to support the trial court’s

 conclusion that respondent [had] complied with the statutory support payment

 requirements’ [the court’s] finding is no longer supported by the evidence.”

¶5 The trial court deferred and set for hearing Respondent’s motion to intervene,
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 motions to dismiss the adoption petitions pursuant to N.C. Gen. Stat. § 48-2-604 and

 asserting federal and state constitutional due process provisions. Prior to this

 hearing being held, both parties entered notices of appeal.

¶6 The parties most recently appeared before this Court in January 2020, wherein

 this Court issued an order dismissing the parties’ interlocutory appeals and directing

 the cause be remanded to the district court for hearing and resolution of the

 remaining issues and motions before the court.

¶7 Following a hearing on 10 June 2021, the trial court issued its order (“August

 2020 Order”) on 13 August 2020, denying Respondent’s motion in the cause and

 motion to dismiss the adoption. The trial court concluded Respondent had a limited

 right to intervene in the action for the court to determine whether N.C. Gen. Stat. §

 48 was unconstitutional as applied to him. The trial court found and concluded

 Respondent “does not qualify for the class of protected fathers whose liberty interests

 are such that he would enjoy a constitutionally paramount protected interest to

 C.H.M.’s custody.”

¶8 The facts underlying Respondent’s and Petitioners’ dispute over C.H.M. are

 well-documented and not in dispute. The parties presently have two additional cases

 pending in Wake County district court involving their eight-year-dispute over C.H.M.

 The painful saga beginning with the birth mother’s dishonesty regarding

 Respondent’s paternity of C.H.M. need not be repeated.
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 II. Jurisdiction

¶9 “A party to an adoption proceeding may appeal a judgment or order entered

 by a judge of district court by giving notice of appeal as provided in G.S. 1-279.1.”

 N.C. Gen. Stat. § 48-2-607(b) (2021). Respondent timely appealed. He asserts his

 appeal of right is made pursuant to N.C. Gen. Stat. §§ 1-277(a), 1-278 and 7A-

 27(b)(3)(a) & (c) (2021).

¶ 10 Petitioners ask this Court to dismiss Respondent’s appeal. Respondent

 acknowledges his appeal may be interlocutory. The August 2020 Order transfers

 jurisdiction of the matter to the Wake County Clerk of Court, Division of Special

 Proceedings with instructions that the adoption proceeding be resolved in accordance

 with the mandate of the North Carolina Supreme Court, this Court, and the

 subsequent orders of the trial court.

¶ 11 Respondent asserts a substantial right will be lost if this appeal is not

 immediately heard. He shows, and Petitioners do not dispute, the August 2020 Order

 resolves all remaining motions and issues. Our appellate courts have recognized that

 orders concerning whether a parent’s consent to an adoption is required implicate a

 substantial right and are immediately appealable. In re Adoption of Baby Boy, 233

 N.C. App. 493, 498, 757 S.E.2d 343, 346 (2014).

¶ 12 Respondent asserts “[if] the adoption proceeds to a final decree of adoption, any

 parental rights that [he] may have had would be terminated. Moreover, the adoption
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 statute severely limits the avenues for challenging a final decree of adoption through

 appeal.” In re S.D.W., 228 N.C. App. 151, 155, 745 S.E.2d 38, 42 (2013) (citations

 omitted), rev’d on other grounds sub nom., In re Adoption of S.D.W., 367 N.C. 386,

 758 S.E.2d 374 (2014). We agree and address the merits of Respondent’s appeal.

 Petitioners’ cross appeal of an unrelated interlocutory order, subsequently stayed by

 our Supreme Court, is dismissed by separate order.

 III. Issue

¶ 13 Whether the trial court erred by denying Respondent’s motion to dismiss the

 adoption petition.

 IV. Analysis

¶ 14 Respondent argues the trial court erred by concluding his conduct excluded

 him from the constitutionally protected class of fathers, whose liberty interests would

 be violated if the adoption petition were allowed. We reject Petitioners’ arguments

 that Respondent had not asserted or preserved this argument for appeal. The record

 and pleadings clearly show: (1) Respondent repeatedly asserted this argument; (2) it

 was not addressed by our Supreme Court; and, (3) was not ripe for our review upon

 remand until ruled upon by the trial court upon remand in its August 2020 Order.

¶ 15 Respondent asserts applying Chapter 48 to preclude his consent to the

 adoption of C.H.M. violates his due process rights. His challenge is an as-applied

 challenge to N.C. Gen. Stat. § 48-3-601 (2021). An as-applied challenge represents a
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 party’s “protest against how a statute was applied in the particular context in which

 [the party] acted or proposed to act.” Town of Beech Mountain v. Genesis Wildlife

 Sanctuary, Inc., 247 N.C. App. 444, 460, 786 S.E.2d 335, 347 (2016) (citation omitted),

 aff’d, 369 N.C. 722, 799 S.E.2d 611 (2017).

 A. Fundamental Parental Rights

¶ 16 The Supreme Court of the United States “recognized the fundamental right of

 parents to make decisions concerning the care, custody, and control of their children.”

 Troxel v. Granville, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000).

 This parental liberty interest is perhaps the oldest of the
 fundamental liberty interests the United States Supreme
 Court has recognized. This interest includes the right of
 parents to establish a home and to direct the upbringing
 and education of their children. Indeed, the protection of
 the family unit is guaranteed not only by the Due Process
 Clause, but also by the Equal Protection Clause of the
 Fourteenth Amendment and possibly by the Ninth
 Amendment.

 Owenby v. Young, 357 N.C. 142, 144–45, 579 S.E.2d 264, 266 (2003) (citations and

 internal quotation marks omitted).

 B. Trial Court’s Findings of Fact

¶ 17 Relevant to Respondent’s present appeal, the trial court found:

 8. Respondent had no ability to visit C.H.M. nor have
 access to her except at the discretion of the Petitioners
 and/or Agency.

 9. Respondent made no request to the adoption agency
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

(Hereinafter the “Agency”) or the Petitioners for any
additional visits with C.H.M. in 2014 after the March 2014
visit. During this time period he continued to purchase
items for the child but did not send those items to the
agency or Petitioners for the remainder of that year.

10. Respondent did not request from either the Agency or
the Petitioners any information as to C.H.M.s well-being or
development for the remainder of 2014.

11. Respondent has never had an email address for the
Petitioners. Respondent was first provided the cell phone
number for Petitioner [] at or around the time the parties
had mediation in October 2016.

12. Petitioners continued to reside for the remainder of
2014 at the address they resided at when the Respondent
and his family visited C.H.M. in March, 2014. (The
Petitioners still reside at this address.)

13. Respondent continued to save money for C.H.M. in his
“lockbox” during the remainder of 2014.

14. There is a dispute in the evidence and evidence proffer
before this Court as to whether Respondent through
counsel offered the existing funds in his lockbox of over
$3260 to Petitioners’ counsel at the conclusion of the
hearing in April, 2014. The Court does not find this dispute
to be material.

15. After the hearing in April 2014 and until January 30,
2015 Respondent paid noting for C.H.M.’s support.

...

23. Respondent after being served with the petition to
terminate his parental rights wrote a letter to A Child’s
Hope dated January 30, 2015. That letter stated
Respondent had saved a total of approximately $5,270 for
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 C.H.M. and enclosed a cashier’s check to the agency for
 $2,635 for C.H.M.’s benefit. Respondent stated he desired
 to send the remaining funds for C.H.M.’s benefit, and he
 subsequently did so. That letter requested pictures of
 C.H.M. and information about her developmental
 milestones and reiterated that he continued to want
 custody of C.H.M.

¶ 18 Respondent does not challenge these findings as unsupported by properly

 admitted evidence. Instead, he contends an unenumerated category of parental

 rights exists that requires his consent for adoption under N.C. Gen. Stat. § 48-3-601.

 C. Lehr v. Robertson

¶ 19 Respondent asserts this category has its roots in the Supreme Court of the

 United States’ opinion in Lehr v. Robertson, 463 U.S. 248, 77 L. Ed. 2d 614 (1983).

 The significance of the biological connection is that
 it offers the natural father an opportunity that no other
 male possesses to develop a relationship with his offspring.
 If he grasps that opportunity and accepts some measure of
 responsibility for the child’s future, he may enjoy the
 blessings of the parent-child relationship and make
 uniquely valuable contributions to the child’s development.
 If he fails to do so, the Federal Constitution will not
 automatically compel a state to listen to his opinion of
 where the child’s best interests lie.

 Id. at 262, 77 L. Ed. 2d at 627 (emphasis supplied).

¶ 20 Respondent asserts his actions fall within an unenumerated category of N.C.

 Gen. Stat. § 48-3-601. He argues he had seized all opportunities available to him and

 that he has done all that he could possibly do under the circumstances “to grasp[]
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 that opportunity” to “develop a relationship with his offspring.” Id.

¶ 21 In Lehr, the putative father “never had any significant custodial, personal, or

 financial relationship with [his child], and he did not seek to establish a legal tie until

 after she was two years old.” Id. The father asserted he was entitled to an additional

 special notice, because the trial court and the mother knew that he had filed an

 affiliation action. Id. at 265, 77 L. Ed. 2d at 629.

¶ 22 The question before the Supreme Court was whether New York’s statutory

 adoption scheme protected “the unmarried father’s interest in assuming a responsible

 role in the future of his child.” Id. at 263, 77 L. Ed. 2d at 627. The Court held the

 father’s opportunity to establish a relationship with his child was adequately

 protected by the adoption statute “that automatically provide[d] notice to seven

 categories of putative fathers who are likely to have assumed some responsibility for

 the care of their natural children.” Id. at 263, 77 L. Ed. 2d at 628.

¶ 23 This Court has previously interpreted Lehr. In the case of In re Adoption of

 B.J.R., 238 N.C. App. 308, 311, 767 S.E.2d 395, 397 (2014), the father “contend[ed]

 that his substantive due process rights supplied by the Fourteenth Amendment to

 the United States Constitution and Article I, Section 19 of the North Carolina

 Constitution were violated by the district court’s determination that his consent to

 adoption was not required[,] and that Chapter 48 [was] therefore unconstitutional as

 applied to him.”
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

¶ 24 The trial court’s findings in B.J.R., showed the father had “made very few

 efforts after the birth of his child to develop a parent-child relationship.” Adoption of

 B.J.R., 238 N.C. App. at 315, 767 S.E.2d at 399. The trial court found that the pre-

 adoptive parents had provided the father “the opportunity to visit the baby, which he

 took advantage of on only one occasion . . . a few weeks after the birth.” Id.

¶ 25 The trial court found the father of B.J.R. had made no further attempts to meet

 with his child or to provide support for her during the next five months. Id. The court

 found the father had purchased diapers, which he never delivered. This Court noted

 “during the child’s first six months of life, besides filing papers with the court, [the

 father] largely remained ‘passive’ in developing a relationship with his child.” Id.

¶ 26 Here, in this “as-applied” challenge, Respondent contends the Petitioners and

 the private adoption agency violated his constitutional rights in the manner in which

 Chapter 48 was applied to him. “[O]nly in as-applied challenges are facts

 surrounding the plaintiff’s particular circumstances relevant.” Town of Beech

 Mountain, 247 N.C. App. at 460, 786 S.E.2d at 347 (citation omitted).

¶ 27 The relevant conduct to our review is Respondent’s conduct towards C.H.M.,

 once he knew she was his child, and any actions the Petitioners or the adoption

 agency took to prevent him from acting “to develop a relationship with his offspring.”

 Lehr, 463 U.S. at 262, 77 L. Ed. 2d at 627.

 D. N.C. Gen. Stat. § 48 - Adoption
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

¶ 28 The Supreme Court of the United States has recognized, “[t]wo state interests

 are at stake in parental rights termination proceedings—a parens patriae interest in

 preserving and promoting the welfare of the child and a fiscal and administrative

 interest in reducing the cost and burden of such proceedings.” Santosky v. Kramer,

 455 U.S. 745, 766, 71 L. Ed. 2d 599, 615 (1982).

¶ 29 Chapter 48 sets forth our General Assembly’s stated purpose:

 (a) . . . it is in the public interest to establish a clear judicial
 process for adoptions, to promote the integrity and finality
 of adoptions, to encourage prompt, conclusive disposition of
 adoption proceedings, and to structure services to adopted
 children, biological parents, and adoptive parents that will
 provide for the needs and protect the interests of all parties
 to an adoption, particularly adopted minors.

 (b) With special regard for the adoption of minors, the
 General Assembly declares as a matter of legislative policy
 that:

 (1) The primary purpose of this Chapter is to
 advance the welfare of minors by (i) protecting
 minors from unnecessary separation from their
 original parents, (ii) facilitating the adoption of
 minors in need of adoptive placement by persons
 who can give them love, care, security, and support,
 (iii) protecting minors from placement with adoptive
 parents unfit to have responsibility for their care
 and rearing, and (iv) assuring the finality of the
 adoption[.]

 N.C. Gen. Stat. § 48-1-100 (2021).

¶ 30 Our Supreme Court stated: “We believe the General Assembly crafted these
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 subsections of this statute primarily to protect the interests and rights of men who

 have demonstrated paternal responsibility and to facilitate the adoption process in

 situations where a putative father for all intents and purposes has walked away from

 his responsibilities to mother and child, but later wishes to intervene and hold up the

 adoption process.” In re Adoption of Byrd, 354 N.C. 188, 194, 552 S.E.2d 142, 146

 (2001). The trial court’s extensive findings and conclusions set forth herein focus on

 the initial and immediate responses of respondent and reveal whether Respondent

 “demonstrated paternal responsibility” or his lack thereof. Id.

¶ 31 Here, while being duped and deceived by the child’s mother into initially

 believing the child was not his, once he learned C.H.M. was his child, Respondent

 remained “passive” in developing a relationship with his child. Respondent testified

 he did not know how to contact Petitioners. However, he and his parents had visited

 C.H.M. in Petitioners’ home when he was in North Carolina for his deposition in this

 matter. He acknowledged he had mailed no notes, cards, nor gifts to C.H.M. after his

 one visit with her in 2014. Respondent purchased a crib, which remained in his home

 in Illinois, and gifts which he did not send to C.H.M., despite knowing Petitioners’

 and the agency’s addresses. Respondent provided no evidence that Petitioners or the

 agency thwarted him in contacting them or C.H.M. during this period of time.

¶ 32 Here, the trial court’s findings focus on Respondent’s “demonstrated parental

 responsibility” or his lack thereof during the period immediately after Respondent
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

 learned he was the father of C.H.M and was served with notice of the pendency of the

 adoption petition in November 2013. Id. Respondent father timely filed his objection

 to the North Carolina adoption petition in December 2013. Respondent made one

 visit with C.H.M. in March 2014 while it coincided with a court appearance. Other

 than his savings in the lockbox and purchase of a crib and some items in Illinois,

 Respondent did not begin any support payments, make or maintain contacts, or make

 any other attempts to parent C.H.M. until 30 January 2015 and after Petitioners had

 filed their Termination of Parental Rights action in November 2014.

¶ 33 The trial court’s supported and unchallenged findings and conclusions reveal

 a father who did not “grasp[] that opportunity and accept[] some measure of

 responsibility for the child’s future.” Lehr, 463 U.S. at 262, 77 L. Ed. 2d at 627.

¶ 34 As the trial court found, Respondent’s later conduct, while laudable, does not

 remove or excuse his non-actions for nine months in 2014, where “for all intents and

 purposes [he]. . . walked away from his responsibilities,” after visiting his child in

 Petitioners’ home. In re Byrd, 354 N.C. at 194, 552 S.E.2d at 146. Respondent’s

 conduct after the 2014 visit failed to preserve his entitlement to the constitutional

 “protection of the family unit” guaranteed by the Due Process Clause” Owenby, 357

 N.C. at 144-45, 579 S.E.2d at 266.

 V. Conclusion

¶ 35 The trial court properly found and concluded Respondent has no statutory or
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 Opinion of the Court

Due Process rights to provide or withhold consent to Petitioners’ adoption of C.H.M.

Further issues involving these parties are not before us and our opinion remands this

matter to the district court and to the clerk of superior court per the trial court’s order

for further proceedings consistent with North Carolina’s adoption laws, N.C. Gen.

Stat. § 48-1-100 et seq. It is so ordered.

 AFFIRMED.

 Judge CARPENTER concurs.

 Judge GORE concurs in part and dissents in part with separate opinion.
 No. COA21-196 – In re Adoption of C.H.M.

 GORE, Judge, concurring in part and dissenting in part.

¶ 36 I join the majority opinion, except for the portion holding that Respondent’s

 has no due process right to withhold consent to the adoption. There is an old adage of

 measuring ten times and cutting once. The majority in this opinion was handcuffed

 from ever being able to take a proper measurement of the totality of the facts of the

 case because of the unfathomable deceit and fraud perpetrated by the biological

 mother. The conduct by the birth mother led to a slippery slope of premature cutting

 of Respondent’s parental rights, by previous rulings and discretionary reviews, prior

 to the case being heard on its merits and a proper review of the denial of Respondent’s

 due process rights by the trial court.

¶ 37 The core foundation of a parent’s rights were expressed when the Supreme

 Court of the United States “recognized the fundamental right of parents to make

 decisions concerning the care, custody, and control of their children.” Troxel v.

 Granville, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000) (citations omitted).

 This parental liberty interest is perhaps the oldest of the
 fundamental liberty interests the United States Supreme
 Court has recognized. This interest includes the right of
 parents to establish a home and to direct the upbringing
 and education of their children. Indeed, the protection of
 the family unit is guaranteed not only by the Due Process
 Clause, but also by the Equal Protection Clause of the
 Fourteenth Amendment and possibly by the Ninth
 Amendment.

 Owenby v. Young, 357 N.C. 142, 144–45, 579 S.E.2d 264, 266 (2003) (citing Troxel,

 530 U.S. at 65, 147 L. Ed. 2d at 56; Meyer v. Nebraska, 262 U.S. 390, 399-400, 67 L.
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 GORE, J., concurring in part and dissenting in part

 Ed. 1042, 1045-46 (1923); Stanley v. Illinois, 405 U.S. 645, 661, 31 L. Ed. 2d 551, 559

 (1972)).

¶ 38 The Respondent made efforts prior to the child being born to establish his role

 as a biological parent. Prior to the birth of the child, he attended a doctor’s

 appointment with the biological mother. After the birth of the child, Respondent

 repeatedly requested the biological mother agree to DNA testing to establish his

 paternity, which she found excuses to not do. The biological mother also refused offers

 by Respondent to provide financial support towards prenatal medical bills and any

 support after the child was born. The record is full of efforts and attempts Respondent

 made to show he wanted to exercise his right “to establish a home and to direct the

 upbringing . . .” of a child that could be his own. Id. at 144, 579 S.E.2d at 266 (citation

 omitted).

¶ 39 The record also establishes that the Petitioners in this case at some point

 actively prevented Respondent from interacting with C.H.M. after initially allowing

 contact. The Petitioners would not let Respondent refer to himself as “daddy” during

 the visit he did have, eventually blocked Respondent’s calls, and stopped responding

 to requests for or allow any visitation. There was a period from March of 2014 until

 January 2015 that Respondent did not contact Petitioners. However, during this time

 Respondent took actions to prepare himself to parent C.H.M. and to show that he

 wanted to “grasp[] that opportunity [to parent] and accept[] some measure of
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 GORE, J., concurring in part and dissenting in part

 responsibility for the child’s future . . . .” Lehr v. Robertson, 463 U.S. 248, 262, 77 L.

 Ed. 2d 614, 627 (1983). In my view the majority’s review of Respondent’s conduct after

 he knew C.H.M. was his biological child does not go far enough. It does not scrutinize

 the trial court’s order to establish that Petitioners were not culpable for conduct that

 impeded Respondent from contacting C.H.M. from March of 2014 until January 2015.

 The trial court’s order establishes in its findings of fact:

 7. Respondent had no ability to visit C.H.M. nor have
 access to her except at the discretion of the Petitioners
 and/or Agency.

 …

 11. Respondent has never had an email address for the
 Petitioners. Respondent was first provided the cell phone
 number for Petitioner [] at or around the time parties had
 mediation in October 2016.

 …

 17. Petitioner [] testified the Petitioners did not want
 support for C.H.M. from Respondent.

 These findings along with the uncontroverted findings that Petitioners purposefully

 withheld or blocked Respondent from contact require the trial court to inquire into

 potential due process violations, and it failed to do so.

¶ 40 My last disagreement with the majority’s opinion about the denial of

 Respondent’s due process rights stems from the conduct of the biological mother from

 the time C.H.M. was born until she was placed for adoption. It appears from the
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 GORE, J., concurring in part and dissenting in part

 record that C.H.M. was eleven-days old when placed for adoption on or about 9 July

 2013. There is an argument that the biological mother’s purposeful denial and refusal

 to allow Respondent DNA testing hindered his due process rights to a degree that it

 mandates his right to object or withhold his consent to adopt. The facts viewed in the

 light most favorable to Respondent, show that if he was on notice that C.H.M. was

 his child or allowed to have DNA testing done there was an eleven-day window

 between birth and adoption that he could have filed a custody action to preserve his

 parental rights. However, Respondent was deliberately denied this opportunity

 because of the blatant fraud perpetrated by the biological mother. The question we

 must address is how long is too long for a parent to be deprived their parental due

 process rights and for a child to be deprived of the opportunity of the love and affection

 from said parent.

¶ 41 A biological parent must be afforded an opportunity to assert their

 constitutional rights. Here, Respondent attempted to assert his constitutionally

 protected rights but was hindered along the way by the fraudulent actions of the

 child’s biological mother. Depriving Respondent of his right to raise his biological

 child without proper review, especially considering the fact he attempted to assert

 his rights and duties as a parent before and immediately after the child was born and

 before he knew with any degree of certainty that C.H.M. was his biological child, is

 not in line with the paramount rights and protections afforded to biological parents
 IN RE ADOPTION OF C.H.M.

 2022-NCCOA-126

 GORE, J., concurring in part and dissenting in part

 by the United States Constitution. See Meyer, 262 U.S. at 399, 67 L. Ed. at 1045

 (finding the rights to conceive and raise one’s children have been deemed “essential”);

 Skinner v. Oklahoma, 316 U.S. 528, 541, 97 L. Ed. 1655, 1660 (1942) (finding the

 right to raise one’s child is a “basic civil right[] of man”); Lehr, 463 U.S. at 262, 77 L.

 Ed. 2d at 627 (“The significance of the biological connection is that it offers the natural

 father an opportunity that no other male possesses to develop a relationship with his

 offspring.”).

¶ 42 While reviewing the totality of the facts of this case the majority is absolutely

 right that: “[t]he painful saga beginning with the birth mother’s dishonesty regarding

 the Respondent’s paternity of C.H.M. need not be repeated.” For that very reason I

 bring out these issues of disagreement with the majority and respectfully concur in

 part and dissent in part.